UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

James Blue Thunder,

     Petitioner,

 vs.

Brian R. Jett, Warden, and
the United States Parole
Commission,

     Respondents.    Civ. No. 09-2454 (DSD/RLE)

 \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

 This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, which challenges the execution of his sentence, see, Title 28 U.S.C. §2241; three (3) Motions for Judicial Notice; and a Motion for an Evidentiary Hearing and for the Appointment of Counsel. See, Docket Nos. 1, 19, 24, 25, and 27. The Petitioner James Blue Thunder

("Blue Thunder") appears <u>pro se</u>, and the Respondent[1] appears by D. Gerald Wilhelm, Assistant United States Attorney. For reasons which follow, we recommend that the Motion for Judicial Notice, see, <u>Docket No. 24</u>, be granted, but that the Petition for a Writ of Habeas Corpus be denied, and that the remaining Motions also be denied.[2]

## II. <u>Factual and Procedural Background</u>

Blue Thunder is a Federal prisoner, who was serving a life imprisonment sentence at the Federal Medical Center, in Rochester, Minnesota ("FMC-Rochester"), when he filed this action, and who is now serving his sentence at the Federal Correctional Institution, in Littleton, Colorado.[3] See, <u>Letter to Court, Docket No. 28</u>.

---

[1] A Habeas Corpus petition is properly brought against the prisoner's custodian -- that is, the person who can produce Blue Thunder before the Court -- in this case, the Warden of the Federal Medical Center, in Rochester, Minnesota, who is Brian R. Jett, and who has been named as a Respondent, see, <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 434 (2004), even where, as here, Blue Thunder challenges a decision of the Parole Commission. See, <u>Robledo-Gonzales v. Ashcroft</u>, 342 F.3d 667, 674 (7th Cir. 2003), citing <u>Guerra v. Meese</u>, 786 F.2d 414, 416 (D.C. Cir. 1986), and <u>Chatman-Bey v. Thornburgh</u>, 864 F.2d 804, 811 (D.C. Cir. 1988); <u>Fritts v. United States Parole Comm'n</u>, 887 F.2d 1079 at *1 (4th Cir. 1989)[unpublished]; see also, <u>Nken v. Napolitano</u>, 607 F. Supp.2d 149, 155 (D.D.C. 2009). Accordingly, we recommend that the United States Parole Commissioner be dismissed from the action.

[2] We have previously denied Blue Thunder's earlier Motion for the Appointment of Counsel. See, <u>Order of September 22, 2009, Docket No. 8</u>.

[3] Despite the fact that, since the filing of the Petition, Blue Thunder has been
(continued...)

The sentence resulted from Blue Thunder's conviction, on September 25, 1978, in the United States District Court for the District of South Dakota, for the Murder of his ex-wife, who was Theresa Sand, in violation of Title 18 U.S.C. §§1153 and 1111. See, Judgment and Probation/Commitment Order, Certificate of Helen H. Krapels ("Krapels Cert."), Docket No 13-1. Exhibit A, at p. 1 of 38.

As to the facts which underlie Blue Thunder's Petition for Habeas relief, Blue Thunder was paroled from his incarceration for Murder, to the District of New Hampshire, on August 14, 1995. See, Certificate of Parole, Krapels Cert., Docket No. 13-1, Exhibit B, at p. 2 of 38. According to a Report by United States Probation Officer E. Maureen Janssen ("Janssen"), Blue Thunder moved from New Hampshire to South Dakota at some time in late 1995, without proper authorization, but was accepted on courtesy supervision in the District of South Dakota in May of 1996. Janssen Letter, Krapels Cert., Docket No. 13-1, Exhibit C, at p. 4 of 38. As related by Janssen in her Report, Blue Thunder was referred to the Sioux Falls United States

---

[3](...continued)
transferred to a facility outside of our District, we retain jurisdiction over the Petition, because Blue Thunder was incarcerated within this District when he filed it, and when the Respondent responded. See, Weeks v. Wyrick, 638 F.2d 690, 692 (8th Cir. 1981); Dortch v. Morrison, 2006 WL 2788181 at *1 n. 1 (D. Minn., September 26, 2006); Schmanke v. United States Bureau of Prisons, 847 F. Supp. 134, 136 n. 3 (D. Minn. 1994).

Probation Office on July 1, 1997, for reported domestic violence problems, and he was placed in a halfway house in Sioux Falls, South Dakota, which was called the Glory House.  Id.

   While Blue Thunder was at the Glory House, he also went to the Veterans Administration's ("VA's") facilities in Sioux Falls, for mental health treatment arising from symptoms of PTSD, and he received reimbursement for travel expenses from the VA, for distances that he did not travel, in the total amount of $489.40.  Id. at p. 5 of 38.  In addition, the Glory House reported that Blue Thunder had failed to report that travel reimbursement money, as he was required to do under program rules, had failed to secure proper employment, and was not compliant with the in-house programming, and that, as a result of all of his conduct, Blue Thunder was expelled from the Glory House, effective October 3, 1997.  Id.; see also, Letter from Dave Johnson, Petitioner's Exhibits, Docket No. 3, Exhibit F, at p. 7 of 29.  As a consequence of Blue Thunder's contact with his then ex-wife, Cindy Nauceder ("Nauceder"), his collection of VA travel reimbursements, to which he was not entitled, and his expulsion from the Glory House for non-compliance and rule violations, Janssen recommended that the United States Parole Commission (the "Commission") issue a Warrant, place Blue Thunder in custody, and commence parole violation proceedings against him.  Id.

The Commission issued the Warrant on October 3, 1997, see, <u>Warrant, Krapels Cert., Docket No. 13-1, Exhibit D</u>, at p. 6 of 38, and the Warrant Application listed the charges as Fraud, related to the travel reimbursements, from July 15, 1997, to September 16, 1997, and the Violation of Special Condition, which was related to Blue Thunder's expulsion from the Glory House. <u>Id.</u> at p. 7 of 38. On December 1, 1997, the Warrant Application was supplemented, so as to include a third charge, for the Violation of a Restraining Order, which was related to Blue Thunder's contact with Nauceder. See, <u>Supplement, Krapels Cert., Docket No. 13-1, Exhibit F</u>, at p. 12 of 38. In his Preliminary Interview with Interviewing Officer Tracy West, which took place on November 20, 1997, at the County Jail, Blue Thunder was represented by counsel, and denied both Charges in the Warrant, on the basis of diminished capacity. See, <u>Summary Report of Preliminary Interview, Krapels Cert., Docket No. 13-1, Exhibit E</u>, at pp. 9-10 of 38; <u>Petitioner's Exhibits, Docket No. 3, Exhibit I</u>, at pp. 11-12 of 29.

In preparation for the Parole Revocation Hearing, Blue Thunder requested subpoenas, from the Commission, which were directed to Bill Sunder ("Sunder"), who

was a Field Examiner for the VA;[4] Dr. Robert Goldberg, who had treated Blue Thunder at the VA; Dr. Michael Stewart from the VA; Dr. Phil Milber from the VA; Brian Pilgrim, who was a "psychiatry trainee" at the VA; and another individual from the VA, all to testify as witnesses. Id. at p. 11 of 38. The Commission sent Blue Thunder a letter on December 30, 1997, which notified him that the Regional Commissioner had found probable cause to believe that Blue Thunder had violated the conditions of his parole, and that a Hearing was scheduled for January 14, 1998, on the Charges of Fraud, of a Violation of Special Condition, and a Violation of a Restraining Order. See, Letter of December 30, 1997, Krapels Cert., Docket No. 13-1, Exhibit G, at pp. 13-14 of 38. In that letter, the Commission also notified Blue Thunder that Judy Middlebrook ("Middlebrook"), who handled travel reimbursements at the VA, and Nauceder, would be subpoenaed as witnesses, but that the requested VA employees would not be subpoenaed, because they had not provided adverse information, upon which the Warrant was based. Id. at p. 14 of 38; Petitioner's Exhibits, Docket No. 3, Exhibits Q and R, at pp. 20-21 of 29.

---

[4]Blue Thunder has submitted a letter dated October 20, 1997, that he received from Sunder, who appears to have investigated the travel reimbursement issue, and who recommends, in the letter, that Blue Thunder repay the money he received, and explain to the Parole Commission his "state of mind" at the time. See, Letter from Bill Sunder, Petitioner's Exhibits, Docket No. 3, Exhibit J, at p. 13 of 29.

The first of two (2) Parole Revocation Hearings was held on January 14, 1998, at the Minnehaha County Jail, in Sioux Falls, South Dakota. See, <u>Revocation Hearing Summary, Krapels Cert., Docket No. 13-1, Exhibit H</u>, at p. 16 of 38. Blue Thunder appeared and was represented by counsel, and Middlebrook and Nauceder testified, and Blue Thunder was excluded from the room while Nauceder testified, although his attorney was present. <u>Id.</u> at pp. 16-17 of 38. The Hearing Officer noted that new information had been received, that Blue Thunder had abused Nauceder's children, which had not yet been added to the Warrant and, after taking evidence on the three (3) Charges then in the Warrant, the Hearing Officer continued the Hearing, for the addition of the new Charges. <u>Id.</u> at pp. 16-17, 20-21 of 38.

Middlebrook testified that Blue Thunder had filed travel vouchers, during the time that he was residing at the Glory House, which is located in the same city as the VA facilities, in which he claimed that he traveled a distance of 494 miles for each visit to the VA, for which he was reimbursed. <u>Id.</u> at p. 17 of 38. With respect to his Violation of a Special Condition Charge, for failing to turn over and report the travel voucher money to the Glory House, Blue Thunder testified that he had not violated the conditions, because he used the money to call long-distance to a Native American Counselor, for help with his PTSD and, while Blue Thunder submitted evidence that

he had been diagnosed with PTSD, the Hearing Officer found that Blue Thunder was aware of the Glory House Rule, but did not report the income.  Id. at p. 18 of 38.

Accordingly, the Hearing Officer concluded that Blue Thunder had committed the Fraud violation, as demonstrated by a preponderance of the evidence, including Janssen's letter, the Glory House letter, Middlebrook's letter and testimony, and Blue Thunder's admission that he submitted the vouchers.  Id. at p. 19 of 38.  The Hearing Officer also found that, based upon a preponderance of the evidence, Blue Thunder had Violated a Special Condition, as evidenced by Janssen's letter, the Glory House letter, and Blue Thunder's admissions, that he had knowingly failed to report income obtained from the VA, but the Hearing Officer concluded that Blue Thunder had not committed the Violation of a Restraining Order, because a Restraining Order had not actually been issued.  Id. at pp. 18-19 of 38.  Based upon those findings, the Hearing Officer recommended that Blue Thunder's parole be revoked, and continued the Hearing for further findings.  Id. at pp. 20-21 of 38.

With respect to the additional Charges, according to a Notice of Allegation by the Rosebud Sioux Tribe Law Enforcement Services ("Rosebud Law Enforcement"), on October 8, 1997, Jacinda Begay ("Begay") reported to Sergeant Esther Murray that Begay's daughter, who was four (4) years old, had related that Blue Thunder had

touched her inappropriately. See, <u>Notice of Allegation Dated October 8, 1997,</u>

<u>Krapels Cert., Docket No. 13-1, Exhibit J</u>, at p. 28 of 38. Also on October 8, 1997,

Nauceder made a report to Rosebud Law Enforcement, that her mother had related to

her, that Nauceder's daughter had reported being assaulted by Blue Thunder, see,

<u>Offense/Incident Report dated October 8, 1997, Krapels Cert., Docket No. 13-1,</u>

<u>Exhibit J</u>, at p. 34 of 38, and Criminal Investigator John Miller ("Miller") interviewed

Nauceder on December 1, 1997, when she reported that her son had shown her welts

on his body, and related that Blue Thunder had beaten him with a belt, and that her

mother had related to her that Nauceder's daughter, who was five years old, had

reported that Blue Thunder had placed his mouth on her vagina, but that Nauceder was

unsure of when the alleged incident had taken place. <u>Id.</u> at p. 29 of 38. The Report

also relates Nauceder's statement, that Blue Thunder had been very abusive towards

her during their marriage, had punched her in the left eye in May of 1997, and had

grabbed her face so hard that her teeth had cut her mouth, and her jaw area had been

bruised. <u>Id.</u> at p. 30 of 38.

In another Report, Miller related that he had interviewed Begay's daughter on

November 21, 1997, and that she had reported that she had experienced a "bad touch"

from a Mike and a Jim, but Miller related that she did not seem to want to speak about

it, and that she had described "Jim" as a person with long hair, glasses, and a blue car. Id. at pp. 31-32 of 38. Begay related that her daughter had reported that Blue Thunder had touched her in the area of her buttocks. Id. at 32 of 38.

On December 24, 1997, Susanna Palmer ("Palmer"), who works with the Vermont Agency of Human Services, sent a letter to Miller, in which she relates that she had interviewed both of Nauceder's children on October 28, 1997, and that Nauceder's son had related that Blue Thunder had hit him with a belt that left marks on his legs, and that he had heard Blue Thunder hit Nauceder, and had seen her mouth bleeding, and Nauceder's daughter related that Blue Thunder had hit Nauceder, and caused her nose to bleed. See, Palmer Report of December 24, 1997, Krapels Cert., Docket No. 13-1, Exhibit J, at p. 37 of 38. Palmer also related the report of Nauceder's daughter, through the use of anatomical drawings, that Blue Thunder had touched her vagina with his mouth and penis. Id.

On March 11, 1998, the Warrant Application was supplemented a second time, in order to include Charges of Communicating a Threat to Kill, Assault, and Rape, with respect to Nauceder; Assault, with respect to Nauceder's children; Sodomy and Unlawful Sexual Contact with a Minor, with respect to Nauceder's daughter; and Unlawful Sexual Contact with a Minor, with respect to Begay's daughter. See, March

11, 1998 Supplement to Warrant Application, Krapels Cert., Docket No. 13-2, Exhibit K, at p. 1 of 55.  The second Revocation Hearing was held on June 3, 1998, and the Commission sent a letter to notify Blue Thunder on May 4, 1998.  Letter of May 4, 1998, Krapels Cert., Docket No. 13-2, Exhibit L, at pp. 3-5 of 55.

At the second Hearing, Blue Thunder appeared and was represented by counsel, and Nauceder, Begay, Miller, Sergeant Esther Murray ("Murray"), from Rosebud Law Enforcement, and Janssen testified.  Second Revocation Hearing Summary, Krapels Cert., Docket No. 13-2, Exhibit M, at pp. 7-8 of 55.  In addition, Sally Joyce ("Joyce"), Cathy Blue Thunder, Alice Blue Thunder, and Martha Blue Thunder, all testified on Blue Thunder's behalf.  Id. at p. 8 of 55.  Nauceder testified that she was physically assaulted by Blue Thunder on a number of occasions, id. at p. 10 of 55; Janssen testified that Blue Thunder had admitted to her that he had struck Nauceder, id.; and Begay testified that she had observed Nauceder with a black eye, cuts, and bruises on her face, that Nauceder had reported that her husband had beaten her, and that Begay had observed Blue Thunder treat Nauceder roughly on other occasions. Id. at pp. 10-11 of 55.  Nauceder also testified that Blue Thunder had threatened her with the same fate as his first wife, which she interpreted to mean that he would kill her.  Id. at p. 11 of 55.

Joyce testified that she had lived with Blue Thunder for two (2) years, and that he had never abused her, but the Hearing Officer determined that she was somewhat biased, as Blue Thunder had left her for Nauceder, and Joyce plainly disliked and disrespected Nauceder. Id. In addition, Martha Blue Thunder, who is Blue Thunder's sister-in-law, and Cathy and Alice Blue Thunder, who are Blue Thunder's nieces, testified that they had never observed Blue Thunder abuse Nauceder, and that they had all lived with Blue Thunder, and Nauceder, for a period of time. Id. However, the Hearing Officer concluded that they were also biased, because they clearly disliked Nauceder, and that their testimony was of little value. Id. at pp. 11-12 of 55. The Hearing Officer also noted that Blue Thunder had attempted to discredit Nauceder's testimony, by showing that she had a relationship with another man, but that this was essentially irrelevant. Id. at p. 12 of 55. Blue Thunder also submitted Affidavits from his acquaintances and relatives, which attested to his good character. Id.

Based upon the testimony of Nauceder, Begay, Janssen, as well as Blue Thunder's admission that he had struck Nauceder on one (1) occasion, although he had testified that it took place during a PTSD-induced nightmare, the Hearing Officer found, by a preponderance of the evidence, that Blue Thunder had assaulted Nauceder, but that there was insufficient evidence to support a finding that he had raped her or

threatened her. <u>Id.</u> at p. 12-13 of 55. Based upon Nauceder's testimony, and the results of the Palmer's interview in Vermont, with Nauceder's children, the Hearing Officer found, by a preponderance of the evidence, that Blue Thunder had committed assaults against Nauceder's children. <u>Id.</u> at p. 13 of 55. As to the Charge of Sodomy or Unlawful Sexual Conduct with a Minor, the Hearing Officer found that a preponderance of the evidence, including Nauceder's testimony, the complaint that Nauceder filed with Rosebud Law Enforcement on October 8, 1997, and Palmer's report, demonstrated that Blue Thunder had committed the charged violation, in spite of his argument, that Nauceder's daughter had never undergone a medical examination, and his medical records, which demonstrated that he suffered from lesions and blisters on his penis caused by yeast infections, which he argued would have prevented him from engaging in sexual activity. <u>Id.</u> at pp. 13-14 of 55.

With respect to the final Charge of Unlawful Sexual Contact with a Minor, the Hearing Officer noted Begay's testimony, her report to Rosebud Law Enforcement on October 7, 1997, that her daughter had been molested by Blue Thunder, Murray's testimony, that she had interviewed Begay's daughter, who had related that a man named "Jim" had molested her, and Miller's testimony that Begay's daughter had related to him a physical description of "Jim," and of a vehicle that matched Blue

Thunder, and Blue Thunder's vehicle, found that a preponderance of the evidence supported a finding that Blue Thunder had committed the violation, in spite of his argument that the timing of Begay's report to Rosebud Law Enforcement, which was on the same day as Nauceder's report, was suspect. Id. at pp. 14-16 of 55.

As a consequence, of the seven (7) violations with which Blue Thunder had been charged, the Hearing Officer found that he had committed five (5), id. at pp. 16-17 of 55, and, due to the risks associated with Blue Thunder exhibiting sexual criminal behavior against children, and committing other serious assaults, the Hearing Officer recommended that Blue Thunder's parole be revoked, and that he be continued to a fifteen (15) year reconsideration Hearing, which was above the guidelines, because of the increased risk. Id. at p. 17-19 of 55. The Commission adopted the Hearing Officer's recommendation on June 24, 1998. See, Notice of Action, Krapels Cert., Docket No. 13-2, Exhibit N, at pp. 20-22 of 55.

Blue Thunder appealed that decision on July 22, 1998, and argued that the decision was based upon erroneous information, that significant information was in existence, but not known at the time of the Hearing, and that the Commission did not have jurisdiction over the alleged VA travel benefits fraud, because the VA had issued letters which stated that the matter was resolved. Blue Thunder attached two (2)

letters, from his attorney, his own letter, his own Affidavit, a number of his medical records, and a copy of a legal action that he had commenced for a Writ of Mandamus, in support of his appeal.  See, Appeal to Department of Justice, Krapels Cert., Docket No. 13-2, Exhibit O, at pp. 23-51 of 55.   According to Blue Thunder, in those submissions, the evidence showed that his brother had committed the Unlawful Sexual Contact crimes, that Blue Thunder had not received proper notice of the additional charges, that he had been denied the opportunity to present exculpatory evidence, in the form of witness testimony and medical evidence, and that Nauceder had fabricated her testimony for personal gain.  Id.  The Commission denied Blue Thunder's appeal, and found his arguments to be unpersuasive.  See, Notice of Action on Appeal, Krapels Cert., Docket No. 13-2, Exhibit P, at p. 52 of 55.

The Commission held interim Review Hearings on March 19, 2002, March 30, 2004, March 2, 2006, and March 26, 2008, and the Commission continued to reaffirm the June, 2013, reconsideration date.  See, Krapels Cert., Docket No. 13-2 and 13-3, Exhibits Q-Y, at pp. 53-55 of 55, and 1-15 of 46.  Blue Thunder's most recent Interim Review Hearing was scheduled for the week of February 8-12, 2010,[5] and, as neither

_____

[5]Blue Thunder has filed a Motion for Judicial Notice of the scheduled date for his 2010 Interim Review Hearing, and has submitted the Notice of Hearing that he
(continued...)

party has informed us of the outcome of that Hearing, we assume, without deciding, that Blue Thunder remains incarcerated at this time.

On February 13, 2002, a United States Magistrate Judge for the United States District Court for the District of Colorado issued a Recommendation, that Blue Thunder's Section 2241 Habeas Corpus Petition, which he had filed on November 7,

---

[5](...continued)
received, which is dated December 10, 2009. See, Docket No. 24. Rule 201(d), Federal Rules of Evidence, provides that "[a] court shall take judicial notice if requested by a party and supplied with the necessary information," and the kind of fact that the Court may judicially notice "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Rule 201(b), Federal Rules of Evidence.

Since the Respondent has not objected to Blue Thunder's Motion for Judicial Notice, since Blue Thunder has supplied the Notice of the Hearing that he received, and since the date of the Interim Hearing is verifiable, from the Commission's records should the need arise, we recommend that the Court take judicial notice that, as of December 10, 2009, the Interim Hearing was scheduled for some time during the week of February 8-12, 2010, and we accept that fact as true, although we note that this background fact does not affect our analysis of the Petition. See, e.g., Oneida Indian Nation of New York v. State of New York, 691 F.2d 1070, 1086 (2nd Cir. 1982)(the Court may take judicial notice of undisputed historical facts, related to the passage of legislation); Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1064 (9th Cir. 2008)(taking judicial notice of the reported stock price history, which was available in public documents); Jacobs v. Lanterman Develop-mental Center, 64 Fed.Appx. 98, 100 n. 2 (9th Cir. 2003)[unpublished](taking judicial notice of a document submitted to the Court, which showed that the plaintiff's complaint had been returned by the Court Clerk on a certain date).

2001, be denied and dismissed, which the District Court adopted.  See, <u>Report and</u>

<u>Recommendation, Krapels Cert., Docket No. 13-3, Exhibit Z</u>, at pp. 16, 42 of 46;

<u>Order, Krapels Cert., Docket No. 13-3, Exhibit AA</u>, at p. 44 of 46.

In his Recommendation, the Magistrate Judge related that, in that Petition, Blue Thunder had challenged his 1998 Parole Revocation Hearing on the following grounds:

> (1)   the [Commission] exceeded its authority when it revoked his parole based upon the fraud charge because 38 U.S.C. §511 preempts their jurisdiction; (2) his parole was revoked based upon false statements from the VA; (3) his parole was revoked based upon false and perjured testimony of his former wife, Cindy, and Jacinda Begay; (4) the [Commission] suborned perjured testimony to revoke his parole; and (5) the [Commission] abused its discretion when it revoked his parole based upon new criminal violations because the offenses were merely ordinances, which fall under Tribal sovereignty jurisdiction, and are not new federal or state crimes. [Blue Thunder] repeatedly states that he is actually innocent of all of the charges.

<u>Id.</u> at pp. 27-28 of 46.

The Magistrate Judge rejected Blue Thunder's claims on their merits.  In particular, the Court found that the Commission's jurisdiction was established under Title 18 U.S.C. §4210, and that the VA statutes did not affect that jurisdiction to revoke Blue Thunder's parole for the fraud committed against the VA.  With respect to Blue

Thunder's argument, that the Commission had relied upon false evidence in its decision, the Court found that its review of the Commission's factfinding was strictly limited to determine whether the Commission's decision had "a rational basis in the record," and that there was sufficient support in the Record for the Commission's decision -- particularly since Nauceder's daughter had identified Blue Thunder as her abuser, and not his brother who, Blue Thunder argued, had committed the crimes against her.

As to Blue Thunder's argument that, because Nauceder and Begay did not prosecute their complaints, the charges were never brought before the Tribal Court, and he was not able to "exhaust" his "administrative claims," such that the Commission did not have jurisdiction over those offenses, the Court found no merit to those assertions, because there is no constitutional prohibition against the Commission considering conduct of which the parolee had not been convicted. The Court further found that the Revocation Hearing had met the Due Process standards for such proceedings, which are not criminal Trials, and that the Tribal Code violations were properly considered, because the Commission had jurisdiction, by

virtue of Blue Thunder's conviction and conditional release, and because the conditions of his parole included the provision that he not violate any law.[6]

Upon a liberal reading of Blue Thunder's Petition, as well as his other submissions,[7] he raises six (6) procedural challenges to the Revocation Hearing: 1) that the Commission had no subject matter jurisdiction to consider the Tribal Code violations, nor to enforce the Tribal Code, without first being "deputized", see, Petitioner's Rebuttal, Docket No. 20, at p. 7 of 7; 2) that Janssen committed a

---

[6]Blue Thunder filed another Habeas Corpus Petition in 2004, in the District of Columbia, which was then transferred to the District Court for the District of Colorado. See, Thunder v. United States Parole Com'n, 165 Fed.Appx. 666 (10th Cir. 2006)[unpublished]. In that case, Blue Thunder claimed that the Commission had exceeded its jurisdiction with respect to the Charge of Fraud, and that his Due Process rights were violated by the revocation of his parole. Id. at 667. In addition, Blue Thunder argued that his abuse of the Writ should be excused because, assertedly, Janssen hid material evidence at the 1998 Revocation Hearing, which is an argument that the District Court, and the Court of Appeals, rejected. Id. at 668. The District Court denied the Petition, and the Court of Appeals affirmed that denial. Id.

[7]Blue Thunder has submitted three (3) self-styled Motions for Judicial Notice, two (2) of which we construe as additional grounds for Habeas relief as, in those two (2) Motions, Blue Thunder requests that the Court take judicial notice of certain alleged facts, and then come to legal conclusions, which would invalidate the revocation of his parole. See, Docket Nos. 25 and 27. Blue Thunder also filed two (2) Motions to Amend, see, Docket Nos. 17 and 23, which we address in our accompanying Order but, in deference to the District Court, we have construed the two (2) Motions for Judicial Notice as being part of the Petition, rather than as Motions to Amend. See, Taylor v. Charter Medical Corp., 162 F.3d 827, 831 (5th Cir. 1998)(legal conclusions are not appropriate for judicial notice).

violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), by allegedly "suppressing" witnesses and medical evidence from the Hearing Officer, see, <u>Memorandum in Support of Petition, Docket No. 2</u>, at pp. 17-18 of 27; 3) that the Commission did not have jurisdiction to consider the Charge of Fraud, because the VA had already made a "final and conclusive" decision that he was not at fault, <u>id.</u> at p. 7 of 27; 4) that the Tribal Courts, and not the Commission, had jurisdiction over the Commission's "contract" -- i.e. the terms of Blue Thunder's parole -- and the criminal conduct Charges, <u>id.</u> at pp. 14-22 of 27; 5) that the Assistant United States Attorney failed to comply with Title 25 U.S.C. Section 2809(b), see, <u>Docket No. 27</u>; and 6) that the Warrant was improperly based upon criminal conduct for which he had not been arrested. See, <u>Docket No. 25.</u>  Blue Thunder appears to assert that those alleged procedural errors violated his right to Due Process, under the Fifth Amendment, and under Title 25 U.S.C. §1302, which extends many of the liberties, that are guaranteed in the Constitution, as against Tribal Governments, and he also argues that, based upon the facts and the Court's purported lack of jurisdiction, the Commission's decision to revoke his parole was arbitrary and capricious, under the Administrative Procedures Act, <u>Title 5 U.S.C. §701, et seq.</u> ("APA").

In addition, Blue Thunder asserts that he is actually innocent of several of the Charges -- specifically, the Charges of Fraud, the Violation of Special Conditions, and the Assault of Nauceder. Blue Thunder apparently intends that those claims of "actual innocence" should be "freestanding claims" -- that is, he seeks to have his parole revocation reversed on that basis as well. See, <u>Memorandum in Support of Petition, Docket No. 2</u>, at pp. 6-8, 9-10, 12-13, and 17-19 of 27.

For his part, the Respondent argues that Blue Thunder's Petition is successive, in that it raises claims that were already considered, and rejected by, the District Court of Colorado as to his 2001 Petition, and also constitutes an abuse of the Writ, because Blue Thunder could have raised his new claims in that earlier Petition. See, <u>Response, Docket No. 11</u>. The Respondent also argues that Blue Thunder has failed to demonstrate "cause" for his successive and abusive Petition, which Blue Thunder disputes, asserting that Janssen's "suppression" of evidence constitutes "cause." With the foregoing as a backdrop, we proceed to the merits of Blue Thunder's Petition, as well as his Motions.

III.  Discussion

A.  Successive Petitions and Abuse of the Writ.  The Respondent contends that the arguments, that are raised in the Petition, were, or could have been, raised in the his Petition of 2001, which Blue Thunder filed in the District of Colorado, and which was denied, and dismissed, and that, as a consequence, the Petition before us is successive, and constitutes an abuse of the Writ.  We agree.

1.  Standard of Review.  "The doctrine of abuse of the writ defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second or subsequent petition for a writ of habeas corpus."  McCleskey v. Zant, 499 U.S. 467, 470 (1991).  "[A]busive claims must always be read in light of the equitable proposition that petitioners 'should include all reasonably available claims and grounds for relief in their first habeas petition.'"  Rehbein v. Clarke, 94 F.3d 478, 483 (8th Cir. 1996), quoting Washington v. Delo, 51 F.3d 756, 760 (8th Cir. 1995), cert. denied, 516 U.S. 876 (1995).

To establish an abuse of the Writ, the Supreme Court has invoked the following standard:

> When a prisoner files a second or subsequent application, the government bears the burden of pleading abuse of the writ.  The government satisfies this burden if, with clarity

and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ.

The burden to disprove abuse then becomes petitioner's. To excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions. The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard. If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

McCleskey v. Zant, supra at 494-95; see also, LaRette v. Bowersox, 70 F.3d 986, 987 (8th Cir. 1995)("To excuse an abuse of the writ, a successive habeas petitioner must show either cause and prejudice, or probable actual innocence."), cert. denied, 516 U.S. 1005 (1995); Heffernan v. Norris, 48 F.3d 331, 333 (8th Cir. 1995)("A habeas petitioner may excuse * * * abuse of the writ by showing cause and prejudice, or actual innocence."), citing McCleskey v. Zant, supra at 489-94.

Our Court of Appeals has also found an abuse of the Writ, where a petitioner raises "claims considered and rejected in [a] prior habeas petition." LaRette v. Bowersox, supra at 987; see also, Zuniga-Hernandez v. Reese, 2002 WL 31553539 at *1 (D. Minn., November 14, 2002)("When a petitioner raises grounds in a subsequent petition that are merely a restatement of the claims considered and rejected in a prior

habeas petition, the petitioner has clearly abused the writ."), citing <u>LaRette v. Bowersox</u>, supra at 987.

In addition, Title 28 U.S.C. §2244(a) provides as follows:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

While our Circuit has not decided the precise question, at least three (3) other Circuits have held that Section 2244(a) applies to petitions, that were filed under Section 2241, notwithstanding its mention of Section 2255. See, <u>Antonelli v. Warden, U.S.P. Atlanta</u>, 542 F.3d 1348, 1352 (11th Cir. 2008)(Section 2244(a) prohibits successive petitions under 2241); <u>Queen v. Miner</u>, 530 F.3d 253, 255 (3rd Cir. 2008)(a Section 2241 petitioner cannot raise new claims that have been, or could have been, raised in a previous petition); <u>Verner v. Attorney General</u>, 190 Fed.Appx. 592, 593 (10th Cir. 2006)[unpublished]; <u>Shabazz v. Keating</u>, 242 F.3d 390 at *2 (10th Cir. 2000) [unpublished](Section 2244(a) means that Courts "are not required to entertain a §2241 petition if the legality of the detention has been determined by a prior application.").

Furthermore, an earlier version of Section 2244(a) specifically stated that a Habeas Corpus petition need not be heard where the legality of the detention had already been decided, "and the petition presents no new ground not heretofore presented and determined."  See, <u>George v. Perrill</u>, 62 F.3d 333, 334 (10th Cir. 1995)(quoting the pre-Antiterrorism and Effective Death Penalty Act).  Section 2244(a) was then amended, and Congress removed the language that had referred to new grounds, so that Section 2244(a) now appears to bar the consideration of claims which have already been litigated in a Habeas Corpus action, as well as those that could have been litigated.  See, <u>Mathison v. Morrison</u>, 2007 WL 3224671 at *2 (D. Minn., November 1, 2007)(concluding that Title 28 U.S.C. §2244(a) prohibits both successive petitions, and abusive petitions, that raise claims that could have been raised earlier); <u>Gutierrez v. Perrill</u>, 104 F.3d 367 at *1 n. 3 (10th Cir. 1996)("As amended, §2244(a) appears now to relate to both abusive and successive petitions.").

The conclusion is supported by the Supreme Court's holding, prior to the amendment, that the earlier version of Section 2244 did not "foreclose application of the court-announced principles defining and limiting a district court's discretion to entertain abusive petitions," <u>McCleskey v. Zant</u>, supra at 487, including that a petition cannot raise new claims that could have been raised earlier, see, <u>Rehbein v. Clarke</u>,

supra at 483; <u>Phelps v. United States Federal Government</u>, 15 F.3d 735, 738 (8th Cir.

1994), cert. denied, 511 U.S. 1114 (1994), and so, that rule continues to apply to

Section 2241 petitions. See, <u>Zayas v. INS</u>, 311 F.3d 247, 256 (3rd Cir. 2002) (finding

that the "abuse of the writ" doctrine applies to successive petitions under Section

2241); <u>Arnaout v. Marberry</u>, 351 Fed.Appx. 143, 144 (7th Cir. 2009)

[unpublished]("[E]ven before the Antiterrorism and Effective Death Penalty Act * *

* federal courts declined to entertain successive petitions under §2241 or §2255,

unless the law had changed or new facts had come to light.").

Where a respondent has demonstrated that a petitioner has abused the Writ, by

seeking to raise a claim for the first time in a successive petition, or has filed a

successive petition, which raises the same claims that have already been decided, the

petitioner must show that "the claim 'is based on facts or legal theories of which he

had no knowledge when prosecuting his prior habeas petition,'" in order to avoid

dismissal, see, <u>Cook v. Lockhart</u>, 878 F.2d 220, 222 (8th Cir. 1989), quoting <u>Williams</u>

<u>v. Lockhart</u>, 862 F.2d 155, 158, 159 (8th Cir. 1988), or that a fundamental miscarriage

of justice would take place, if his claim is not considered -- or, put differently, that he

is actually innocent, based upon new evidence. See, <u>Storey v. Roper</u>, 603 F.3d 507,

523 (8th Cir. 2010); <u>Rehbein v. Clarke</u>, supra at 483; <u>Schlup v. Delo</u>, 513 U.S. 298,

324 (1995); see also, <u>Rosales-Garcia v. Holland</u>, 322 F.3d 386, 400 (6th Cir. 2003),

citing <u>Sanders v. United States</u>, 373 U.S. 1, 16 (1963); <u>Arnaout v. Marberry</u>, supra at

144-45; <u>Byrd v. Delo</u>, 917 F.2d 1037, 1039-40 (8th Cir. 1990).

        2.    <u>Legal Analysis</u>.  We find that the Respondent has demonstrated

that Blue Thunder previously filed a Habeas Corpus Petition in 2001, in the District

of Colorado, in which he raised many of the same claims that he raises in the present

Petition, and which were considered and rejected by that Court, and that the remaining

claims, that are newly raised in the present Petition, could have been raised in that

action.  Specifically, Blue Thunder claimed, in his 2001 Petition, that the Commission

lacked jurisdiction over the VA violations, and the Tribal Code violations, and that the

Commission's factual conclusions were erroneous, and the Court rejected those

claims, and held that the Commission had wide discretion to consider a variety of

conduct in determining whether to revoke a prisoner's parole, and concluded that the

Commission's factual conclusions had a rational basis in the Record.   As a

consequence, Blue Thunder's claim, that the Commission lacked subject matter

jurisdiction over the fraud against the VA, and the Tribal Code violations, and his

challenge to those factual findings,[8] are successive, and cannot be sustained here.  See,

Davis v. Fechtel, 150 F.3d 486, 490-91 (5th Cir. 1998)(third 2241 petition, which

raised the same claims as the second 2241 petition, was successive); Antonelli v.

Warden, U.S.P. Atlanta, supra at 1352; Thunder v. United States Parole Comm'n, 165

Fed.Appx. 666, 667-68 (10th Cir. 2006)[unpublished]; O'Neal v. Levi, 551 F. Supp.2d

379, 388 (E.D. Pa. 2008).

Further, to the extent that Blue Thunder bases those same claims -- which

challenge the jurisdiction of the Commission, and its factual conclusions -- on

alternative arguments, which are not based upon any change in the law, the new

arguments do not alter our conclusion, that those claims are successive.  See, Morales

v. Ornoski, 439 F.3d 529, 532 (9th Cir. 2006)(finding a claim successive where "the

basic thrust or gravamen" was the same, in the context of a 2254 petition); Campbell

v. Blodgett, 997 F.2d 512, 516 (9th Cir. 1992)("[A] different factual basis or argument

asserted to support the same legal theory advanced previously does not constitute a

---

[8]To the extent that Blue Thunder seeks to have the Commission's factual
determinations reviewed under the APA, that review is, in any event, inappropriate.
See, Jones v. United States Bureau of Prisons, 903 F.2d 1178, 1184 (8th Cir.
1990)(Courts have no jurisdiction to review the substantive decisions of the Parole
Commission, unless they are so arbitrary and capricious as to amount to a violation
of Due Process.).  As we have explained, the District Court of Colorado has already
ruled that the Commissioner's decision satisfied the requisites of Due Process.

new ground for relief and is successive."), cert. denied, 510 U.S. 1215 (1994), citing

Sanders v. United States, supra at 16; Day v. Cody, 85 F.3d 640 at *2 (10th Cir. 1996)

[Table Decision](a petitioner "may not refile every time he concocts a new theory --

or puts a new spin on an old theory," in the context of a Section 2254 petition).

    Accordingly, we find that the claims, which we have previously identified as

1, 3, 4, 5, and 6, and which all relate to the Commission's authority to revoke Blue

Thunder's parole based upon a variety of statutory arguments, including the APA, are

successive, and must be dismissed on that basis, as well as his challenges to the

Commission's factual conclusions under the APA.

    In addition, with respect to Blue Thunder's newly-raised claim, that Janssen

failed to disclose exculpatory evidence to the Hearing Officer, in violation of Brady

v. Maryland, supra, we find that the claim could have been raised in his 2001 Petition.

While Blue Thunder contends that he did not realize that Janssen had interviewed

personnel at the VA, until he received documents from the VA at a later date -- which,

notably, he does not specify -- the Exhibits that Blue Thunder has submitted plainly

demonstrate that Blue Thunder was notified, prior to the Revocation Hearing, that his

requested witnesses, from the VA, would not be subpoenaed, and he obviously

requested those witnesses because he believed that they had information that would

be exculpatory, or at least beneficial to him.  Further, the medical records, which he appears to contend were suppressed, were his own, and he could have easily obtained them, in order to challenge the Hearing Officer's purported failure to consider that evidence, in his 2001 Petition.

As a consequence, Blue Thunder had the opportunity to challenge the Commission's refusal to subpoena those witnesses, and the absence of his medical records from the Hearing Record, as to his 2001 Petition, and his attempt to raise the claim here, constitutes an abuse of the Writ.  See, McCleskey v. Zant, supra at 498 ("[T]he petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition" and, "[i]f what petitioner knows or could discover upon reasonable investigation supports a claim for relief in a federal habeas petition, what he does not know is irrelevant."); Phelps v. United States Federal Gov't, supra at 738; see, Boardley v. Grondolsky, 343 Fed.Appx. 837, 839 (3rd Cir. 2009)[unpublished](a claim of inaccurate fact-finding, that the petitioner had failed to properly raise in an earlier petition, could not be raised in his subsequent petition); Boling v. Williamson, 305 Fed.Appx. 7, 7 (3rd Cir. 2008)[unpublished](same); Gilbert v. Purdy, 192 F.3d 126 at *1 (5th Cir. 1999)[unpublished].

Since the Respondents have satisfied their burden of demonstrating, with clarity and particularity, an abuse of the Writ, the burden shifts to the petitioner to demonstrate cause and prejudice, or his probable actual innocence, in order to allow that petition to proceed. See, LaRette v. Bowersox, supra at 987; Rehbein v. Clarke, supra at 483; Washington v. Delo, supra at 760-61. In order to satisfy the "cause" requirement, the petitioner must show that some external impediment prevented him from presenting his claim in a timely, and procedurally proper, manner. See, McCleskey v. Zant, supra at 490 (the same standard that governs excuse of State procedural defaults governs the excuse in the "abuse-of-the-writ context."); Bell v. Attorney General of State of Iowa, 474 F.3d 558, 561 (8th Cir. 2007)("A cause is sufficient to excuse procedural default when it is external to the petitioner, and not attributable to the petitioner."), cert. denied, 552 U.S. 912 (2007), citing Coleman v. Thompson, 501 U.S. 722, 753 (1991)("[C]ause under the cause and prejudice test must be something **external** to the petitioner, something that cannot fairly be attributed to him * * * [f]or example, 'a showing that the factual or legal basis for a claim was not reasonably available * * * or that some interference by officials made compliance impracticable[.]'")[emphasis in original], quoting, in turn, Murray v. Carrier, 477 U.S. 478, 488 (1986).

Reading his submissions liberally, Blue Thunder argues that he has shown "cause," because Janssen prevented him from asserting the claim when she purportedly "suppressed" the evidence and witnesses, but we find no merit to the argument. See, <u>Blue Thunder's Rebuttal, Docket No. 20</u>, at pp. 2-3 of 7. First, Blue Thunder's claim is that Janssen suppressed the evidence from the Hearing Officer, and not from Blue Thunder. Further, as we have explained, there was nothing that prevented Blue Thunder from challenging the completeness of the Record, in his 2001 Petition, based upon evidence that he knew of, or could have easily discovered, regardless of whether he was aware of Janssen's participation in the investigation of those Charges.[9]

In fact, Blue Thunder was able to raise an argument that challenged the completeness of the Hearing Record, in his direct appeal of the Commission's

---

[9]Blue Thunder's assertion, that he was not aware of Janssen's involvement, is not supported by the Record, as the evidence, which he relies upon to demonstrate her involvement, shows that Janssen went **with Blue Thunder** to the VA, during 1997. See, <u>Motion to Amend, Docket No. 17</u>, at p. 1 of 6 (the evidence revealed that " * * * Parole officer accompanied [Blue Thunder] to several Practitioners & Social Workers in the facility," which demonstrated her "personal knowledge" and "suppression" of relevant exculpatory facts); <u>Blue Thunder's Rebuttal, Docket No. 20</u>, at p. 2 of 7 (arguing that the VA records show that Janssen spoke to VA employees, and that those employees could have exonerated Blue Thunder of the Charges of Fraud and Assault of Nauceder); see also, <u>Medical Record, Petitioner's Exhibits, Docket No. 3, Exhibit E</u>, at p. 6 of 29.

decision, where he argued that his Due Process rights had been violated by the Commission's denial of subpoenas for the requested witnesses, and by the absence of other medical evidence that he contended would support his defenses. As a consequence, there is clearly nothing "external" to Blue Thunder that prevented him from raising his purported <u>Brady</u> claim, in his 2001 Petition.[10]

Blue Thunder also contends that he has satisfied the "fundamental miscarriage of justice" prong, and that the evidence, which he has submitted, demonstrates that he is "actually innocent" of a few of the Charges -- namely, the Charges of Fraud, because it was just a mistake, and because he repaid the VA; the Violation of a Special Condition because, under the VA Statutes, the Glory House could not ask him to report his VA benefits, or turn them over; the Assault of Nauceder, because it was

_____

[10]Since Blue Thunder has plainly failed to satisfy the cause requirement, it is unnecessary to consider the prejudice component. See, <u>Washington v. Delo</u>, 51 F.3d 756, 760 (8th Cir. 1995)("Since no cause has been shown, we need not reach the issue of prejudice," and "[w]e therefore conclude that Washington's second petition is successive and an abuse of the writ."), cert. denied, <u>sub nom. Washington v. Bowersox</u>, 516 U.S. 876 (1995); see also, <u>Cagle v. Norris</u>, 474 F.3d 1090, 1099 (8th Cir. 2007)("If a prisoner fails to demonstrate cause, the court need not address prejudice."), citing <u>Mathenia v. Delo</u>, 99 F.3d 1476, 1481 (8th Cir. 1996) cert. denied, <u>sub. nom. Mathenia v. Bowersox</u>, 521 U.S. 1123 (1997); <u>Ashker v. Class</u>, 152 F.3d 863, 871 (8th Cir. 1998)(when a Habeas petitioner "has not shown adequate cause to overcome the procedural bar * * * we need not consider the issue of actual prejudice"); <u>Sweet v. Delo</u>, 125 F.3d 1144, 1151 (8th Cir. 1997), cert. denied, <u>sub nom. Sweet v. Bowersox</u>, 523 U.S. 1010 (1998) (same).

"just a slap."[11]  We indulgently construe his claims of actual innocence as having been asserted to excuse his abuse of the Writ, as Blue Thunder argues that "relief is still available to him," due to his actual innocence, and his constitutional claims, in his Rebuttal to the Respondent's Response.  See, Docket No. 20 at p. 3 of 7.

As the Supreme Court has explained, "'actual innocence' means factual innocence, not mere legal insufficiency."  Bousely v. United States, 523 U.S. 614, 623-24 (1998).  Further, a petitioner claiming actual innocence must support that claim "with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  See, Schlup v. Delo, supra at 324.  If the petitioner produces new evidence, the Court then turns to consider whether the evidence demonstrates that it is more likely than not that no reasonable Juror -- or in this case, Hearing Officer -- would have found him guilty, in light of the new evidence and, if the Court concludes in the petitioner's favor on that question, then, and in that event only, does the Court consider the merits of the defaulted claims.  See, Hamilton v. Roehrich, 628 F.

_____

[11]Notably, Blue Thunder does not specifically argue, in this case, that he is "actually innocent" of the Charge of Assault of both of Nauceder's children; the Charge of Sodomy and Unlawful Sexual Contact with a Minor, as to Nauceder's daughter; or the Charge of Unlawful Sexual Contact with a Minor, as to Begay's daughter.

Supp.2d 1033, 1049 (D. Minn. 2009), quoting <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1351 (8th Cir. 1997), cert. denied, 522 U.S. 1093 (1998), and <u>Johnson v. Norris</u>, 170 F.3d 816, 818 (8th Cir. 1999); <u>United States v. Siepker</u>, 2008 WL 5273088 at *8 (N.D. Iowa, December 18, 2008)("The lack of any new evidence alone is enough to deny [the petitioner's] claim when characterized as an actual innocence claim.").

Here, we find that Blue Thunder's claims of "actual innocence," so as to excuse his successive and abusive Petition, must fail, as he has submitted no new evidence to support those claims.  In arguing that he has submitted "new evidence," Blue Thunder appears to refer to the predicted testimony of the witnesses that the Commission refused to subpoena, as well as the medical records from the VA, which discuss his diagnosis of PTSD, and which relate that, at a therapy session, Nauceder agreed that Blue Thunder had, as he puts it, "just slapped" her.  However, we find that those facts are not "new evidence" for, as we have explained, Blue Thunder was well aware of those facts at the 1998 Revocation Hearing, as well as before he filed his 2001 Petition, and Blue Thunder has not submitted any Affidavits, or otherwise sworn statements of the proposed witnesses, in order to explain what evidence they would add to the proceedings.  See, <u>Weeks v. Bowersox</u>, supra at 1352 (the petitioner's failure to submit any of the evidence he alleged would support his "actual innocence"

failed to satisfy the requisite showing).  Further, Blue Thunder's bare assertion, that Nauceder lied, fails to satisfy the necessary showing, in order to demonstrate "probable actual innocence."  See, <u>Kyle v. Duncan</u>, 16 Fed.Appx. 678, 679 (9th Cir. 2001)[unpublished](bare allegations are insufficient to show "actual innocence"); <u>Massey v. Scibana</u>, 211 F.3d 1269 at *2 (6th Cir. 2000)[unpublished]("[A] petitioner should submit documentary evidence of his actual innocence beyond his mere allegations," and the petitioner's bare allegations were not "facially adequate").

Moreover, Blue Thunder's argument, that the Glory House's contract, which required him to turn over his income, including VA benefits, was illegal in light of his interpretation of certain Federal Statutes, see, <u>Title 38 U.S.C. §5301</u>; <u>Title 38 U.S.C. §1503</u>; <u>Title 26 U.S.C. §6334(a)</u>, is not supported by any new evidence, and is based upon statutes and laws that, insofar as we can discern, have not changed in any material manner since the 1998 Revocation Hearing, or his 2001 Petition.[12]  See,

_____

[12]Title 38 U.S.C. §5301 was amended in 2003, in order to include a clarifying paragraph, which is related to the definition of an assignment for purposes of the Statute.  See, <u>Title 38 U.S.C. §5301(a)(3)</u>; <u>Public Law 108-183 (2003)</u>.  Since this added subsection specifically relates that it is merely a clarification, rather than a substantive change, there is nothing to suggest that the legal argument, which Blue Thunder asserts here, was unavailable to him at his 1998 Revocation Hearing, or when he filed his Section 2241 Petition in 2001.  See, <u>Sanders v. United States</u>, 373 U.S. 1, 17 (1963)(in a successive 2254 Petition, the injustice exception can be met by a
(continued...)

Collins v. Zant, 892 F.2d 1502, 1505 (11th Cir. 1990), cert. denied, 498 U.S. 881

(1990)(in evaluating the "ends of justice," a Court may consider new arguments when

they are based upon changes in the law).

As a consequence, Blue Thunder has failed to satisfy the first prong of the

"actual innocence" test, by failing to present new evidence of his asserted innocence,

and the Court's refusal to consider the merits of his Petition will not constitute a

fundamental miscarriage of justice, and therefore, his abuse of the Writ, and

successive Petition, cannot be excused on that ground. See, Hamilton v. Roehrich,

supra at 1049 (a petitioner must support his allegations of actual innocence with "new

reliable evidence that was not presented at trial.")[internal quotations omitted];

Osborne v. Purkett, 411 F.3d 911, 920 (8th Cir. 2005), cert. denied, 547 U.S. 1022

(2006); Nance v. Norris, 392 F.3d 284, 291 (8th Cir. 2004)(actual innocence must be

_____

[12](...continued)
showing that there has been "an intervening change in the law."); Overstreet v.
Caspari, 998 F.2d 636, 637 (8th Cir. 1993), cert. denied, 510 U.S. 981 (1993).

In addition, Title 38 U.S.C. §1503 was amended in 2004, but only to exclude
life insurance policy proceeds from Veterans' taxable income, see, Public Law 108-
454 (2004), which are not at issue here, and Title 26 U.S.C. §6334 has not been
amended since the Revocation Hearing, and so, as a result, the arguments that Blue
Thunder advances, under those Statutes, were available to him at the Hearing, and
when he filed his 2001 Petition.

supported by new reliable evidence that was not available at the time of Trial), cert. denied, 546 U.S. 858 (2005), citing <u>Amrine v. Bowersox</u>, 238 F.3d 1023, 1029 (8th Cir. 2001), cert. denied, 534 U.S. 963 (2001).

Further, to the extent that Blue Thunder asserts that his claims of actual innocence are "freestanding claims" -- that is, are not to excuse his failure to raise his claims earlier, or to excuse successive claims, but as an attempt to "prove his innocence outright," <u>Jones v. Motley</u>, 2009 WL 2922839 at *3 (E.D. Ky., September 10, 2009), quoting <u>Cody v. United States</u>, 2009 WL 2043887 at *1 (E.D. Tenn., July 2, 2009), citing, in turn, <u>House v. Bell</u>, 547 U.S. 518, 554-55 (2006), those "freestanding claims" fail, since "actual innocence" does not, standing alone, afford Habeas relief in non-capital cases such as this one.  See, <u>Herrera v. Collins</u>, 506 U.S. 390 (1993); see also, <u>United States ex rel. Little v. Graber</u>, 2003 WL 22956008 at *2 (N.D. Ill., December 11, 2003).

In sum, we find that the Respondent has convincingly shown that the Petition is successive, and that it also constitutes an abuse of the Writ, and Blue Thunder has failed to rebut that showing, by demonstrating either "cause and prejudice" or

"probable actual innocence," and therefore, we recommend that the Petition be denied, and dismissed, with prejudice.[13]

B.    Motion for an Evidentiary Hearing.

Blue Thunder has requested an Evidentiary Hearing, see, Docket No. 19, and argues that he has raised a fact issue by the Exhibits that he has submitted to the Court, with respect to his claim that Janssen suppressed evidence at the Revocation Hearing in 1998.

We find that an Evidentiary Hearing is not warranted for, as we have explained, Blue Thunder has failed to allege sufficient grounds for relief, due to his abuse of the Writ, as well as his successive claims, and due to the absence of a showing that his failure should be excused for "cause and prejudice," or "probable actual innocence." See, Toney v. Gammon, 79 F.3d 693, 697 (8th Cir. 1996)(noting that an Evidentiary Hearing is warranted when the petitioner alleges "sufficient grounds for release[,and] relevant facts are in dispute"), quoting Wilson v. Kemna, 12 F.3d 145, 146 (8th Cir. 1994); Amos v. State of Minnesota, 849 F.2d. 1070, 1072 (8th Cir. 1988), cert. denied,

_____

[13]Although the decision was not cited by the Respondent, our recommendation is underscored by the decision of the Tenth Circuit Court of Appeals, which affirmed the District Court's dismissal of Blue Thunder's Petition, which he filed in 2004, as successive and abusive.  See, Thunder v. United States Parole Com'n, 165 Fed.Appx. 666 (10th Cir. 2006)[unpublished].

488 U.S. 861 (1988)(noting that "an evidentiary hearing is unnecessary where the petitioner's allegations, even if true, fail to state a claim upon which habeas relief can be granted."), citing <u>Brown v. Lockhart</u>, 781 F.2d 654, 656 (8th Cir. 1986); see also, <u>Campbell v. Blodgett</u>, supra at 524 (finding an Evidentiary Hearing was not warranted, where the Record clearly showed that the petitioner had abused the Writ, and he had made no showing of "cause and prejudice"). Blue Thunder has simply not raised an issue that would require the taking of additional evidence, and accordingly, we recommend that his request for an Evidentiary Hearing be denied, and that Blue Thunder's request for appointment of counsel, so as to represent him at that Evidentiary Hearing, be denied as moot.

NOW, THEREFORE, It is --

RECOMMENDED:

1.    That the Petition for a Writ of Habeas Corpus [Docket No. 1] be denied, and dismissed with prejudice.

2.    That the Petitioner's Motion for an Evidentiary Hearing [Docket No. 19] be denied, and that the Petitioner's Motion for Appointment of Counsel [Docket No. 19] be denied, as moot.

3.     That the Petitioner's Motion for Judicial Notice [Docket No. 24] be granted.

4.     That the Petitioner's Motion for Judicial Notice [Docket No. 25] be denied.

5.     That the Petitioner's Motion for Judicial Notice [Docket No. 27] be denied.


Dated:  August 12, 2010                    *s/Raymond L. Erickson*
                                           Raymond L. Erickson
                                           CHIEF U.S. MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than August 26, 2010,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 26, 2010,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.